IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § § § § § | |
| V. | No. 3:20-cr-32-X (11) |
| CALVIN JAMES THOMAS, | |
| Defendant. | |

## **MEMORANDUM OPINION AND ORDER**

In an Order Accepting Report and Recommendation of the United States Magistrate Judge Concerning Plea of Guilty, dated August 7, 2020, United States District Judge Brantley Starr has referred this matter to the undersigned United States magistrate judge for a hearing to determine whether it has been clearly shown that there are exceptional circumstances under 18 U.S.C. § 3145(c) why Defendant Calvin James Thomas should not be detained under 18 U.S.C. § 3143(a)(2) and whether it has been shown by clear and convincing evidence that Defendant Calvin James Thomas is not likely to flee or pose a danger to any other person or the community if released under 18 U.S.C. § 3142(b) or (c). *See* Dkt. No. 176.

### **Background**

Defendant is set for sentencing before Judge Starr on December 9, 2020. *See* Dkt. No. 177. "[W]hether a defendant should be released pending trial and whether a defendant should be released pending sentencing or appeal are distinct inquiries

governed by different provisions of the Bail Reform Act." *United States v. Lee*, 31 F. App'x 151, No. 01-30876, 2001 WL 1747632, at *1 (5th Cir. Dec. 4, 2001).

"The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal." FED. R. CRIM. P. 46(c). 18 U.S.C. § 3143(a)(2) dictates that the Court "shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless – (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

On February 6, 2020, the undersigned United States magistrate judge released Defendant subject to an Order Setting Conditions of Release. *See* Dkt. No. 89.

"The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal." FED. R. CRIM. P. 46(c). 18 U.S.C. § 3143(a)(2) dictates that the Court "shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless – (A)(i) the judicial officer finds

there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

Defendant filed an Amended Motion to Continue his Conditions of Release Pending his Sentencing, in which he identifies the exceptional circumstances under 18 U.S.C. § 3145(c) that he contends justify his continued release post-conviction and in which he addresses whether he is likely to flee or pose a danger to any other person or the community if released under 18 U.S.C. § 3142(b) or (c) pending sentencing. *See* Dkt. No. 201.

The Court held a hearing on September 15, 2020 on the matters referred by Judge Starr, at which Defendant appeared in person and through counsel and the government's counsel appeared.

**Legal Standards and Analysis**

As a preliminary matter, Defendant is subject to mandatory detention under Section 3143(a)(2) because he has, on a guilty plea, now been adjudged guilty of a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). *See* Dkt. No. 176. That is "an offense in a case described in subparagraph (A) ... of subsection (f)(1) of section 3142,"

specifically, "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)."

Defendant therefore must be detained pursuant to 18 U.S.C. § 3143(a)(2) unless he meets the conditions of release set forth in Section 3143(a)(2) or 18 U.S.C. § 3145(c). Release of "a person who has been found guilty of an offense in a case described in [18 U.S.C. § 3142(f)(1)(A)] and is awaiting imposition or execution of sentence" requires that "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2)(B); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016) ("The decision to detain Jacqueline after conviction is a common one because of the presumption in favor of detention that attaches to a convicted defendant. *See* 18 U.S.C. § 3143."); *United States v. Lopez*, 504 F. App'x 297, 298 (5th Cir. 2012) ("A defendant who has been convicted 'shall … be detained' pending sentencing 'unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released.' Thus, there is a presumption against release pending sentencing." (footnotes omitted)). As the United States Court of Appeals for the Fifth Circuit has repeatedly recognized, Federal Rule of Criminal Procedure 46(c) and Section 3143(a)(1) impose a burden on a convicted defendant seeking release pending sentencing to show by clear and convincing evidence that she or he is not a flight risk

or a danger to the community. *See* 18 U.S.C. § 3143(a)(1); FED. R. CRIM. P. 46(c) ("The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."); *United States v. Lockett*, 549 F. App'x 269 (mem.), No. 13-11097, 2013 WL 6623771, at *1 (5th Cir. Dec. 17, 2013).

Further, Defendant must meet the conditions of release set forth in Section 3143(a)(2)(A) or 3145(c). Defendant cannot, and does not claim that he can, satisfy the Section 3143(a)(2)(A) showing that there is a substantial likelihood that a motion for acquittal or new trial will be granted or that an attorney for the government has recommended that no sentence of imprisonment be imposed on Defendant.

18 U.S.C. § 3145(c) provides that "[a] person subject to detention pursuant to [18 U.S.C. §] 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in [18 U.S.C. §] 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." As reflected in the Report and Recommendation Concerning Plea of Guilty [Dkt. No. 51], Section 3145(c) provides an alternative basis for pre-sentencing release under "exceptional circumstances," so long as Defendant also makes the required showing under Section 3143(a)(1) and 3143(a)(2)(B) – that is, by clear and convincing evidence that Defendant is not likely to flee or pose a danger to the safety of any other person or

the community if released under 18 U.S.C. § 3142(b) or 3142(c) pending sentencing. *See United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991).

The Court finds that Defendant has made the required showing that he is not likely to flee or pose a danger to the safety of any other person or the community if continued on release. As Defendant explains in his motion, he "can show that he is neither a flight risk nor a danger to society" where

> [t]his case stems from several indictments related to a drug operation in Dallas, Texas. Thomas was the lowest member of this operation. He was charged with conspiracy to possess with intent to distribute. After his indictment, Thomas took responsibility for his conspiracy actions and pleaded guilty to one count of conspiracy under 18 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). In his factual resume, he admitted to distributing drugs on two different occasions, involving 27 ounces of drugs.
>
> Thomas did not have a criminal record other than a drug offense when he was seventeen years old. He took responsibility for that crime too. After his conviction, Thomas remained out of the drug world for years until he lost his job as a supervisor at a local chicken processing business and could not find another job. He started to sell drugs to obtain money to pay bills. He now admits that he should have continued searching for another job once he got back on his feet financially. That was a mistake he will always regret. It was this admission that leads Thomas to accept responsibility for his actions.
>
> After his indictment, Thomas was granted release pending his trial subject to conditions of release. Under these conditions, Thomas was required to obtain a driver's license; he was required to obtain verifiable employment; he was required to continue paying his child support (which he has a long history of paying); he was required to take period drug tests; and he was required to maintain contact with his probation officer. Thomas has satisfied all his release conditions.

Besides satisfying his release conditions, Thomas has actually thrived under the pressure of complying with these conditions. He obtained a job with an entity called Gerdios through an employment company called Abacus. For this job, Thomas is unloading and loading trucks for Bath and Body Works. He started on or about June 1, 2020. During his time there, he began as a temporary employee, working on a limited schedule. Within a short time, he earned the right to work more hours and even to work overtime. Recently, his hard work over the prior three months was rewarded with an offer of full-time employment. This employment offers Thomas a future of secure work.

Thomas' employer has adopted significant protocols to protect against COVID-19 infections. This includes daily temperature checks before work starts and vigilant adherence to strict social distancing. No one is permitted to interreact within six feet of another employee. To do this, Thomas' employer changed its normal procedures for loading trucks—which usually requires two people in the truck packing items and two people delivering packages to the truck—so that only one person is in the truck loading items and one person is delivering the items to the truck. And everyone must always wear a protective mask.

….

His compliance with this current terms of release demonstrate this point. Indeed, his recent success at his employment, as well as his family connections in Dallas, including his daughter, negate any risk that Thomas would flee.

Moreover, the COVID-19 pandemic itself has severely mitigated the risk that Thomas would flee before his sentencing hearing for several reasons. First, Thomas cannot travel without a significant risk of exposure to the virus with the potentially serve health consequences that would follow such exposure, making it very unlikely that Thomas would flee. Second, in response to the pandemic, the federal government, as well as each state government, have placed significant travel restrictions on every mode of travel. This is especially true for people traveling from Texas. Given that Texas is considered a hotspot for infection, many states have placed heightened restrictions on Texas citizens who enter their state. It is one thing to flee during normal times;

  it is quite another to flee during a pandemic when states are imposing check points and looking for people coming from hotspots like Texas. Thomas is not a flight risk.

Dkt. No. 201 at 3-5, 8.

  The issue of Defendant's presentencing release therefore turns on whether "it is clearly shown that there are exceptional reasons why [Defendant's] detention [pending sentencing] would not be appropriate." 18 U.S.C. § 3145(c). In support of that showing, Defendant explains:

> Defendant Thomas can demonstrate that the COVID-19 pandemic creates an "exceptional reason" under 18 U.S.C. § 3145(c) that justifies Thomas' release pending his sentencing. Thomas' medical condition, including damage to his lungs and bouts of high blood pressure, creates an elevated risk that Thomas could suffer severe consequences if he is exposed to COVID-19. This is especially true given that Texas is a hot spot for infections and deaths within the United States and because flu season is set to start within a month. Given that this Court will know significantly more by December—when Thomas' sentencing hearing is set—about whether the spread of COVID-19 will again intensify and create an untenable situation in Texas detention facilities, the decision to permit Thomas to continue his conditions of release is significant. Texas is already the state with the most COVID-19 fatalities at its detention facilities. This situation is truly a matter of life and death, where an extra three months of incarceration during this pandemic could be catastrophic. This global pandemic clearly satisfies the exceptional reason for release because it is rare and unique.
>
> ....
>
>   The COVID-19 pandemic is the worst global pandemic since the Spanish Flu of 1918. The destruction from this pandemic continues unabated. It has infected more than 6 million people within the United States. It has destroyed millions of businesses. It has interrupted

educational facilities across the country. And it has killed close to 200,000 people in the United States. Within the United States, Texas is one of the states hit hardest with detention facilities having the highest number of COVID-19 cases and fatalities in the country.

While COVID-19 is a threat to anyone who contracts it, people with certain medical conditions are more susceptible to dire consequences, including death. According to the CDC, the following medical conditions heighten the risk of severe health consequences if the person is infected with COVID-19: (1) asthma, (2) high blood pressure, (3) damaged or scarred lung tissue; and (4) diabetes.

Thomas has medical conditions that fall within the range of these heightened medical conditions. As a child, Thomas was diagnosed with asthma. It was severe enough that his mother refused to allow him to play organized sports until middle school. Thomas also has damaged lungs that stem from his smoking habit that started when he was only in seventh grade. He now smokes a pack of cigarettes a day. By smoking as a young child, Thomas has damaged his lungs. This damage manifests itself in coughing spells that occur periodically. While Thomas knows that this damage stems from his own bad decision to continue smoking cigarettes, the fact that he was able to obtain and smoke cigarettes in middle school mitigates some of this culpability. In either event, the damage has been done, which makes him more susceptible to severe health consequences from COVID-19.

Besides the damage to his lungs, Thomas has some other maladies that make him more suspectable to serious health consequences. For the past ten years or so, Thomas has avoided consuming too much sugar or carbohydrates because it causes severe migraine headaches. These migraine headaches are symptoms that Thomas might have diabetes. This makes sense given that Thomas's biological mother and father have each been diagnosed with diabetes. Thomas also has suffered bouts of high blood pressure. This high blood pressure has manifested in instances where Thomas' vision was affected. In one instance, Thomas' mother took his blood pressure and found it to be hypertensive. [Thomas has not been officially diagnosed with diabetes or high blood pressure because he has not been to a doctor for a physical since he was a child. But he has sought to treat these

> maladies without any diagnosis. In conjunction with filing this motion, Defendant's counsel has advise Defendant Thomas that he needs to have a complete physical to determine whether he has diabetes (like his parents) or high blood pressure, which may require medication to control.] Finally, within the last five years, Thomas suffered chest pains that were severe enough to force him to visit an emergency room.
>
> ….
>
> The COVID-19 pandemic is a rare and unique event that qualifies as an exceptional reason for release. *See United States v. Harris*, Criminal Action No. 19-356, 2020 U.S. Dist. LEXIS 53632 (D.D.C. March 27, 2020). To illustrate, federal courts have recently ordered the release of defendants who are at a heightened risk of serious health consequences if infected with COVID-19 because of underlying health conditions. For these individuals, courts have found that "it is not possible for a medically vulnerable inmate to isolate himself in this institutional setting as recommended by the CDC." *United States v. Ramos*, 2020 U.S. Dist. LEXIS 52586 *4 (D. Mass. March 26, 2020 (exceptional reasons based on diabetes and asthma). The defendant's risk of serious infection while in custody as a result of his medical condition presents a unique combination of circumstances giving rise to a situation that is out of the ordinary. *United States v. Witter*, 2020 U.S. Dist. LEXIS 53189 * 4 (S.D.N.Y. March 26, 2020) (hypertension).
>
> Federal courts have even recognized that Defendants who are not medically venerable can establish extraordinary circumstances because this virus can be deadly to anyone, especially with inadequate medical services. This is especially true in Texas given that Texas has the highest number of COVID-19 casualties in detention facilities throughout the United States.

Dkt. No. 201 at 1-3, 6-8 (citations and footnotes omitted).

The government does "not take a position on whether the COVID-19Pandemic establishes an 'exceptional reason' under 18 U.S.C. § 3145(c); instead, the government will defer to the Court on this issue." Dkt. No. 198 at 9.

The United States Court of Appeals for the Fifth Circuit has explained that the "exceptional reasons" provision "was added to § 3145(c) with the mandatory detention provisions of § 3143(a)(2) and (b)(2) and was apparently designed to provide an avenue for exceptional discretionary relief from those provisions." *Carr*, 947 F.2d at 1240. The United States Court of Appeals for the Second Circuit offers a working definition of "exceptional reasons": "a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). That court also explained that, in assessing reasons proffered as the basis for release under Section 3145(c), "a case by case evaluation is essential." *Id.* The United States Court of Appeals for the Eighth Circuit has similarly explained that "'exceptional' means 'clearly out of the ordinary, uncommon, or rare.'" *United States v. Little,* 485 F.3d 1210, 1211 (8th Cir. 2007) (citation omitted). One court has explained that, "to avoid emasculating the mandatory detention statute[,] 'exceptional reasons review is limited to determining whether remanding the defendant to custody until sentencing would be tantamount to subjecting individuals to unjust detention.'" *United States v. Thomas*, No. 10-cr-229, 2010 WL 3323805, at *2 (D.N.J. Aug. 20, 2010) (quoting *United States v. Christman,* 712 F. Supp. 2d 651, 655 (E.D. Ky. 2010)).

District courts in this circuit have noted a variety of circumstances that do not rise to the level of exceptional. *See United States v. Cyrus*, No. 10-0228-04, 2010 WL 5437247, at *1-*2 (W.D. La. Dec. 27, 2010) (need to "secure his home and attend to other personal matters" were not exceptional reasons justifying release pending sentencing); *United States v. Douglas*, 824 F. Supp. 98, 99-100 (N.D. Tex. 1993) (defendant's cooperation with the government that subjected him to potential retaliation by co-defendants and his attempts at rehabilitation did not constitute exceptional reasons); *United States v. Dempsey*, No. 91-098, 1991 WL 255382, at *1-*2 (E.D. La. Nov. 19, 1991) (poor health, emotional and mental problems, and need to properly prepare his business and his family for his long absence were not exceptional circumstances); *United States v. Scott*, No. 1:95-CR-80-1, 1995 WL 723752, at *1-*2 (E.D. Tex. Nov. 22, 1995) (need to assist parent was a purely personal reason that was no more exceptional than those routinely rejected by courts); *see also United States v. Landry*, No. CR 15-32-JWD-SCR, 2015 WL 5202458, at *2-*4 (M.D. La. Sept. 4, 2015); *United States v. Posada*, 109 F. Supp. 3d 911, 912-16 (W.D. Tex. 2015).

The Court finds that Defendant's health-related concerns regarding the COVID-19 pandemic do not by themselves meet the exceptional reasons requirement. While Defendant points to decisions from outside this circuit, judges in this district have denied requests for presentencing release under Section 3145(c) based on concerns

related to COVID-19 outbreaks. See *United States v. Matteson*, No. 5:20-CR-36-H-BQ, 2020 WL 3474080 (N.D. Tex. June 10, 2020), *rec. accepted*, 2020 WL 3470297 (N.D. Tex. June 25, 2020); *United States v. Kerr*, No. 3:19-cr-296-L, 2020 WL 1529180 (N.D. Tex. Mar. 31, 2020). Although, in those cases, the defendant offered no evidence to demonstrate that he was at an elevated risk of contracting the virus if he were detained or that the facility where he would be detained presents an unreasonable risk of infection, *see Matteson*, 2020 WL 3474080, at *3, at least one judge has explained that even if the defendant had asserted that "he has an underlying health condition that makes him more susceptible to contracting COVID-19 than other detainees in the event of an outbreak," "the court is not convinced that it would be sufficient, without more, to meet his burden under Section 3145(c)," *Kerr*, 2020 WL 1529180, at *3.

And – although not Defendant's primary basis for meeting the Section 3145(c) requirement – neither does his compliance with his conditions of pretrial release, although that is certainly commendable, particularly having worked up from a temporary position to being hired last week into a permanent position carrying health benefits. Under Section 3145(c), a defendant who is compliant with his release conditions and doing everything that he should is not – by virtue of that compliance alone – so out of the ordinary and, in that sense, "exceptional" among defendants who are on release at the time that they are found guilty as to justify an exception to Section 3142(a)(2)'s rule of mandatory detention. *See generally United States v. Bernard*, No. 1:12-cr-00022-JAW-02, 2013 WL 145582, at *2 (D. Me. Jan. 14, 2013) ("One way of

thinking about compliance with the terms of pretrial release and a lack of significant criminal history is that they make out a necessary but not sufficient showing for release under § 3145(c).").

But, here, the Court determines that all of the circumstances that Defendant asserts are, taken together at this unusual point in time, a unique combination of circumstances giving rise to a situation that is out of the ordinary. Among other circumstances, Defendant presents what the Court believes to be valid health-related concerns that he may be particularly vulnerable to severe complications if he contracts COVID-19 – as he has carefully avoided doing while on release – and he has very recently obtained permanent employment and health insurance. The Court finds that the totality of the facts presented here amount to a situation in which Defendant's presentencing detention would not be appropriate.

## Conclusion

The Court finds that Defendant Calvin James Thomas has presented so unique a combination of circumstances that is so clearly out of the ordinary, uncommon, or rare as to justify ordering release pending sentencing under Section 3145(c) and that Defendant Calvin James Thomas met her burden to clearly show exceptional circumstances why she should not be detained pending sentencing – that is, exceptional reasons why his detention would not be appropriate – and to show by clear and

-14-

convincing evidence that he is not likely to flee or pose a danger to any other person or the community if he remains on release pending sentencing.

The Court GRANTS Defendant Calvin James Thomas's Amended Motion to Continue his Conditions of Release Pending his Sentencing [Dkt. No. 201] and ORDERED that Defendant Calvin James Thomas shall remain on release, subject to the Court's Order Setting Conditions of Release [Dkt. No. 89], as previously modified, pending his sentencing before Judge Starr.

SO ORDERED.

DATED: September 15, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE